## CRIMINAL COMPLAINT REDACTED

### Affidavit

I, James A. Thomas, being duly sworn, depose and state as follows:      REDACTED COPY

**Background of Affiant**                                                2:16MJ301

1. I, James A. Thomas, am a Police Officer with the City of Virginia Beach Police Department. I have been employed in this capacity since September of 1990. During the past twenty-two years of service, I have worked as a narcotic detective with Special Investigations to include over twelve years as a deputized Task Force Officer with the United States Department of Justice Drug Enforcement Administration, in Norfolk, Virginia. During the course of my law enforcement experience, I have received extensive training emphasizing drug identification, distribution techniques, and methods of narcotic investigations and enforcement.

2. This affiant is familiar with the facts and circumstances surrounding the investigation of Lamar Alexander SINCLAIR, also known as "JUVO" and "LONDO." This affiant has reviewed reports of the Virginia Beach Police Department related to the investigation of SINCLAIR. This affiant has compiled information derived from these reports and participated in additional discussions about the investigation of SINCLAIR with Virginia Beach Police Department Narcotic Detectives and with several cooperating, unindicted co-conspirators. This affidavit contains a probable cause statement to support the issuance of an arrest warrant for the offense of Possession of Heroin with the Intent to Distribute and does not contain all the information known to this affiant regarding the investigation. Based upon this affiant's experience and training, as well as the investigation up to this point, this affiant knows the following.

**Facts Supporting Probable Cause**

3. In November of 2015, Virginia Beach Police Detectives initiated an investigation of **Lamar Alexander SINCLAIR** after detectives developed information that SINCLAIR was involved in the distribution of heroin in Virginia Beach, and that SINCLAIR was directly connected with several reported heroin related overdoses in Virginia Beach, VA.

4. From January of 2016 to April of 2016, Detectives of the Virginia Beach Police Department and this affiant conducted an investigation of SINCLAIR that included: surveillances, three undercover purchases of heroin from an unindicted co-conspirator in which SINCLAIR was identified as the source of supply for the heroin purchased by the undercover detective, and nine controlled purchases of heroin directly from SINCLAIR with the utilization of a Virginia Beach Confident Informant. In addition, the Virginia Beach Police Department documented four heroin overdose incidents of individuals who received emergency medical care after using heroin that was supplied by SINCLAIR.

1

5. On January 29, 2016, Virginia Beach Detectives utilized a Confidential and Reliable Informant, hereinafter referred to as CI #1, to introduce Undercover Detective Brent Riddick to an unindicted co-conspirator, hereinafter referred to as "UCC." During this meeting, Detective Riddick gave the "UCC" $200.00 of recorded Virginia Beach City Funds in exchange for a quantity of heroin. The "UCC" instructed Detective Riddick to wait for him and he would return with the heroin. Detectives conducted surveillance of the "UCC", following the "UCC" from Detective Riddick, to SINCLAIR, and back to Detective Riddick. Upon returning, the "UCC" gave Detective Riddick a quantity of suspected heroin, which was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 1.1297 grams of heroin and fentanyl.

6. On February 5, 2016, Detective Riddick contacted the "UCC" and made arrangements to purchase a quantity of heroin. Detective Riddick and the "UCC" agreed to meet in the parking lot of the Harris Teeter Grocery Store, 2800 Artic Avenue, Virginia Beach, VA. During this meeting, Detective Riddick gave the "UCC" $200.00 of recorded Virginia Beach City Funds in exchange for a quantity of heroin. As before, the "UCC" instructed Detective Riddick to wait for him and he would return with the heroin. Once again, Detectives conducted surveillance of the "UCC", following him from Detective Riddick, to SINCLAIR, and back to Detective Riddick. Upon returning, the "UCC" gave Detective Riddick a quantity of suspected heroin. In addition, prior to the transaction, other detectives established surveillance of SINCLAIR and observed SINCLAIR leave his residence of ████████████████████, Virginia, travel to 26 ½ Street, where a detective observed the "UCC" get into the passenger side of SINCLAIR'S rental vehicle. After the "UCC" and SINCLAIR separated, detectives followed the "UCC" to Detective Riddick who was waiting for him at the Harris Teeter. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 0.8829 grams of heroin and fentanyl.

7. On February 26, 2016, Detective Riddick contacted the "UCC" and made arrangements to purchase a quantity of heroin. Detective Riddick and the "UCC" agreed to meet in the parking lot of the Harris Teeter Grocery Store, 2800 Artic Avenue, Virginia Beach, VA. During this meeting, Detective Riddick gave the "UCC" $200.00 of recorded Virginia Beach City Funds in exchange for a quantity of heroin. As before, the "UCC" instructed Detective Riddick to wait for him and he would return with the heroin. Once again, Detectives conducted surveillance of the "UCC", following him from Detective Riddick, to SINCLAIR, and back to Detective Riddick. Upon returning, the "UCC" gave Detective Riddick a quantity of suspected heroin. In addition, prior to the transaction, other detectives established surveillance of SINCLAIR and observed SINCLAIR leave his

residence of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Virginia, travel to 25 ½ Street, where a detective observed the "UCC" get into the passenger side of SINCLAIR'S rental vehicle. After the "UCC" and SINCLAIR separated, detectives followed the "UCC" to Detective Riddick who was waiting for him at the Harris Teeter. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 0.97 grams of heroin.

8. Also on February 26, 2016, Virginia Beach Detectives developed another Confidential Informant, hereinafter referred to as CI #2, who advised detectives that he/she could make controlled purchases of heroin from SINCLAIR. Detectives showed CI #2 a photo of SINCLAIR, and CI #2 positively identified the individual in the photograph as being SINCLAIR. CI #2 further advised that SINCLAIR also utilized aliases of "LONDO" and "JUVO." While under the direction and control of detectives, CI #2 placed a call to SINCLAIR'S cell phone number, ▓▓▓▓▓▓▓, and arranged to purchase $170.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him at the corner of Parks Avenue and 12th Street in Virginia Beach, VA. Detectives conducted a search of CI #2 for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $170.00 of recorded Virginia Beach City Funds in exchange for a quantity of heroin. Detectives transported CI #2 to the prearranged meeting location specified by SINCLAIR. In addition, detectives established surveillance at SINCLAIR'S residence and observed SINCLAIR leave his residence and travel to the meeting location, where detectives observed SINCLAIR pick up CI #2. Detectives followed SINCLAIR and CI #2 a short distance, to the 7-11 parking lot at the corner of Cypress Road and Virginia Beach Boulevard. Detectives observed CI #2 exit SINCLAIR'S vehicle and walk back to a pre-determined location to meet with detectives. Upon meeting with detectives, CI #2 relinquished a quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. Detectives subsequently conducted a field test of the suspected heroin purchased from SINCLAIR, which yielded a positive result for Heroin.

9. On February 27, 2016, while under the direction and control of detectives, CI #2 placed a call to SINCLAIR'S cell phone number, ▓▓▓▓▓▓▓, and arranged to purchase $170.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him at the corner of 24th Street near Barberton Drive in Virginia Beach, VA. Detective conducted a search of CI #2's person and vehicle for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $170.00 of recorded Virginia Beach City Funds. Detectives followed CI #2 to the prearranged meeting location specified by SINCLAIR. Detectives observed SINCLAIR arrive at the meet location and meet with CI #2 for less than a minute, then drive away. Detectives followed CI #2 back to a pre-determined meet location, where upon meeting with detectives, CI #2 relinquished a

quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 0.8480 grams of heroin and fentanyl.

10. On March 2, 2016, while under the direction and control of detectives, CI #2 placed a call to SINCLAIR'S cell phone number, ███████, and arranged to purchase $170.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him at the corner of Bird Neck Road and Norfolk Avenue in Virginia Beach, VA. Detectives conducted a search of CI #2 for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $170.00 of recorded Virginia Beach City Funds. Detectives transported CI #2 to the prearranged meeting location specified by SINCLAIR. In addition, detectives established surveillance at SINCLAIR'S residence and observed SINCLAIR leave his residence and travel to the meet location, where detectives observed SINCLAIR pick up CI #2. Detectives followed SINCLAIR and CI #2 a short distance, to 404 North Bird Neck Road. Detectives observed CI #2 exit SINCLAIR'S vehicle and walk back to a pre-determined location to meet with detectives. Upon meeting with detectives, CI #2 relinquished a quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 0.9556 grams of heroin.

11. On April 1, 2016, while under the direction and control of detectives, CI #2 placed a call to SINCLAIR'S cell phone number, ███████, and arranged to purchase $170.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him at the ████ ████████████████████████████████, VA. Detectives conducted a search of CI #2's person and vehicle for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $170.00 of recorded Virginia Beach City Funds. Detectives followed CI #2 to the prearranged meeting location specified by SINCLAIR. Detectives observed SINCLAIR arrive at the meet location and heard CI #2 speaking with SINCLAIR over the audio monitoring device. Shortly thereafter, detectives observed SINCLAIR drive away. Detectives followed CI #2 back to a pre-determined meet location, where upon meeting with detectives, CI #2 relinquished a quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 1.081 grams of heroin and fentanyl.

12. On April 6, 2016, while under the direction and control of detectives, CI #2 placed a call to SINCLAIR'S cell phone number, █████████, and arranged to purchase $170.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him at the Magnuson Hotel, at 5708 Northampton Boulevard, Virginia Beach, Virginia. Detectives conducted a search of CI #2's person and vehicle for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $170.00 of recorded Virginia Beach City Funds. Detectives followed CI #2 to the prearranged meet location specified by SINCLAIR. Detectives conducting surveillance observed a silver Toyota pull into the hotel parking lot, and park in front of room 156. Detectives observed SINCLAIR exit the silver Toyota and knock on the door of room 156. SINCLAIR entered the room after the door was opened by a female. Shortly thereafter, detectives observed SINCLAIR exit room 156 and walk towards the back of the hotel. SINCLAIR then walked back to the silver Toyota and drove to the back of the hotel where CI #2 was waiting. CI #2 and SINCLAIR met briefly and detectives heard over the audio monitoring device CI #2 confirming that the deal had been completed. Detectives observed SINCLAIR in the silver Toyota leaving the hotel parking lot after the transaction was completed. Detectives followed CI #2 back to a pre-determined meet location, where upon meeting with detectives, CI #2 relinquished a quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for .7012 grams of heroin. Detective's checked the hotel registry for the Magnuson Hotel for April 6, 2016 and it showed SINCLAIR as the registered occupant of room 156.

13. On April 9, 2016, while under the direction and control of detectives, CI #2 placed a call to SINCLAIR'S cell phone number, █████████, and arranged to purchase $170.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him on Gimbert Drive in Virginia Beach, VA. Detectives conducted a search of CI #2's person and vehicle for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $170.00 of recorded Virginia Beach City Funds. Detectives followed CI #2 to the prearranged meeting location specified by SINCLAIR. Detectives observed SINCLAIR arrive in front of █████████ and met with CI #2 for less than a minute, then drive away. Detectives followed CI #2 back to a pre-determined meet location, where upon meeting with detectives, CI #2 relinquished a quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 1.1774 grams of heroin.

14. On April 13, 2016, while under the direction and control of detectives, CI #2 placed a call to SINCLAIR'S cell phone number, ███████, and arranged to purchase $170.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him at the corner of 6th Street and Pacific Avenue in Virginia Beach, VA. Detectives conducted a search of CI #2's person and vehicle for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $170.00 of recorded Virginia Beach City Funds. Detectives followed CI #2 to the prearranged meet location specified by SINCLAIR. Detectives observed SINCLAIR arrive and met with CI #2 for less than a minute, then drive away. Detectives followed CI #2 back to a pre-determined meet location, where upon meeting with detectives, CI #2 relinquished a quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 0.5059 grams of heroin. Furthermore, detectives continued to follow SINCLAIR to ███ ████████████████████ Virginia, where SINCLAIR remained for several hours.

15. On April 15, 2016, while under the direction and control of detectives and this affiant, CI #2 placed a call to SINCLAIR'S cell phone number, ███████, and arranged to purchase $500.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him at the ████████████████████████████, VA. Detectives conducted a search of CI #2's person and vehicle for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $500.00 of DEA Official Advanced Funds. Detectives and this affiant followed CI #2 to the prearranged meet location specified by SINCLAIR. Furthermore, other detectives observed SINCLAIR'S rental vehicle parked near 1276 Corsair Drive, a short distance from the trailer park. CI #2 called SINCLAIR and advised him that he/she was at the meet location waiting for SINCLAIR. A short time later, this affiant observed SINCLAIR arrive at the meet location and heard CI #2 speaking with SINCLAIR over the audio monitoring device. Shortly thereafter, this affiant observed SINCLAIR drive away, followed by CI #2. Detectives and this affiant followed CI #2 back to a pre-determined meet location, where upon meeting with detectives, CI #2 relinquished a quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 3.1048 grams of heroin.

16. On April 20, 2016, while under the direction and control of detectives and this affiant, CI #2 placed a call to SINCLAIR'S cell phone number, ███████, and arranged to purchase $500.00 worth of heroin from SINCLAIR. SINCLAIR instructed CI #2 to meet him at the corner of Barberton Drive and 22nd Street in Virginia Beach, VA. Detectives

6

conducted a search of CI #2's person and vehicle for contraband and no contraband was found. Detectives equipped CI #2 with an audio monitoring device and $500.00 of DEA Official Advanced Funds. Detectives and this affiant followed CI #2 to the prearranged meet location specified by SINCLAIR. Furthermore, other detectives observed SINCLAIR'S rental vehicle parked near 1276 Corsair Drive, Virginia Beach, VA. Detectives followed SINCLAIR from 1276 Corsair Drive to the meet location. This affiant observed SINCLAIR arrive at the meet location and park his vehicle alongside of CI #2's vehicle, for less than two minutes. This affiant observed SINCLAIR drive away, followed by CI #2. Detectives and this affiant followed CI #2 back to a pre-determined meet location, where upon meeting with detectives, CI #2 relinquished a quantity of suspected heroin to detectives. Detectives conducted a search of CI #2 for contraband and no further contraband was found. CI #2 explained to this affiant that SINCLAIR stopped next to CI #2's vehicle and tossed the heroin into CI #2's vehicle through the open window. CI #2 advised this affiant that he/she tossed the $500.00 into SINCLAIR'S vehicle to complete the transaction. The suspected heroin was sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 2.2787 grams of heroin.

17. On April 21, 2016, a Virginia Beach Detective appeared before a Virginia Beach Magistrate and obtained search warrants for ███████████████████████, Virginia and ████████████████████████ 23502. In addition, six felony arrest warrants were obtained for SINCLAIR for violations of the Virginia Drug Control Act.

18. On April 22, 2016, Detectives conducted surveillance of SINCLAIR'S vehicle parked near 1276 Corsair Drive. Detectives observed SINCLAIR exit 1276 Corsair Drive, Apartment 103, and use a key to lock the door behind him. As SINCLAIR walked across the street to his vehicle, SINCLAIR was arrested and taken into custody on the outstanding arrest warrants. Detectives executed the search warrant for 1276 Corsair Drive, Apartment #103 and recovered approximately 54 individual bags of suspected heroin that were concealed within two light switches of the residence, as well as marijuana, packaging materials, and suspected cutting agent. Detectives also located multiple prescription medication bottles with SINCLAIR'S name on them, clothing belonging to SINCLAIR, his Social Security Card, along with other personal effects. The suspected narcotics were sent to the Commonwealth of Virginia Department of Forensic Science Laboratory for analysis and tested positive for 13.38 grams of marijuana and 6.5357 grams of heroin. The covers of the light switches where also analyzed and SINCLAIR'S latent fingerprint was recovered on one of the light switch covers that concealed a portion of the heroin.

7

19. In addition, this affiant interviewed several witnesses who made statements against their penal interest concerning their involvement with SINCLAIR and the usage and distribution of heroin. In particular, this affiant interviewed two witnesses that advised this affiant that SINCLAIR was well aware that some of the heroin he distributed contained fentanyl. The witnesses provided details of SINCLAIR calling them to brag about overdose incidents after customers used heroin supplied by SINCLAIR that also contained fentanyl. A witness advised this affiant that after an overdose in February of 2016, SINCLAIR bragged to the witness that he had the "Good Missile" (heroin) that almost sent people home (referring to overdose) and bragging about the fact that someone almost died from SINCLAIR'S heroin. The witness advised that SINCLAIR began singing the song "Amazing Grace" and laughing about the overdose and near death experience of the individual. A second witness advised this affiant that SINCLAIR bragged about how good his heroin was and called it "The Missile" because it was causing people to pass out.

20. Based on the foregoing, this affiant believes there is probable cause to believe Lamar Alexander SINCLAIR violated Title 21, United States Code, Section 841(a)(1), Possess with the Intent to Distribute Heroin and Fentanyl, and I request an arrest warrant be issued. The incidents described in this affidavit occurred in the Eastern District of Virginia. This affidavit does not contain all of the information that this affiant knows about this investigation.

James A. Thomas
DEA Task Force Officer

Reviewed and Approved:

William Muhr
Assistant United States Attorney

Sworn to and Subscribed before me on this _____ day of July 2016.

United States Magistrate Judge
at Norfolk, Virginia

8